IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

KINESIO USA, LLC, a New Mexico limited
liability company, and
KINESIO HOLDING CORPORATION, a New
Mexico corporation,
KINESIO IP, LLC, a New Mexico limited liability
company,

        Plaintiffs,

v.                                                              No. Civ. 12-00831 LH/KBM

JOHN A. "JACK" HOPE, an individual,

        Defendant,

and

JOHN A. "JACK" HOPE, an individual,

        Counterclaimant,

v.

KINESIO HOLDING CORPORATION, a New
Mexico corporation,

        Counterdefendant.

**MEMORANDUM OPINION AND ORDER**

On October 11, 2012, Plaintiffs Kinesio USA, LLC ("Kinesio USA") and Kinesio IP, LLC ("K-IP"), and Plaintiff/Counterdefendant Kinesio Holding Corporation ("KHC"), collectively "Plaintiffs," filed a Motion for Summary Judgment (Doc. 13). Defendant/Counterclaimant John A. Hope ("Mr. Hope" or "Defendant") opposes the motion, arguing that questions of fact preclude summary judgment. The Court, having considered the motion, briefs, evidence, arguments, relevant law, and otherwise being fully advised, and having

determined it has jurisdiction over the controversy, concludes that the motion should be granted.

I.    **FACTUAL BACKGROUND**[1]

On February 25, 2010, Kinesio USA and KHC filed a lawsuit against Mr. Hope and John J. Jarvis, a former employee of Plaintiffs, in the Second Judicial District Court for the State of New Mexico, No. D-202-CV-2010-02583 (the "State Court Case"). *See* Pls.' Mem. (Doc. 14) at 2; Def.'s Resp. (Doc. 15) ¶ 1.  Kinesio USA and KHC alleged claims against Mr. Jarvis for breach of fiduciary duty, breach of a covenant not to compete, and embezzlement, and against Mr. Jarvis and Mr. Hope for fraud, negligent misrepresentation, prima facie tort, civil conspiracy, and violation of the New Mexico Unfair Practices Act.  Pls.' Mem., Ex. 1-B ("Settlement Agreement") (Doc. 14-3) at 1.  The State Court Case involved allegations of unfair dealings by Mr. Hope and Mr. Jarvis, who purportedly entered into a business venture together and formed a company to supply athletic tape to Plaintiffs.  *See* Pls.' Mem. (Doc. 14) at 1-2; Defs.' Resp. (Doc. 15) ¶ 2.[2]  Kinesio USA and KHC sought money damages and an order requiring Mr. Jarvis and Mr. Hope to disgorge the amounts paid to Grace International Limited ("Grace"), a company with which Mr. Hope and Mr. Jarvis were affiliated.  *See* Def.'s Resp. (Doc. 15), UF ¶ 2 & Aff. of John A. Hope (Doc. 15-5) ¶¶ 3-5.  Mr. Jarvis also served as the national Marketing Director for PerformTex Products, LLC ("PerformTex"), a limited liability company owned by Mr. Hope, and in his position he promoted PerformTex products, including its therapeutic elastic tape, and procured contracts with customers for the purchase of PerformTex tape products.  Aff. of John A. Hope (Doc. 15-5) ¶¶ 6-8; Settlement Agreement

---

[1] The vast majority of facts in this case are undisputed.  Defendant failed to follow this Court's Local Rule 56.1(b) by stating the number of each movant's fact that is in dispute.  *See* D.N.M.LR-Civ. 56.1(b).  Instead, Defendant listed its own set of purportedly undisputed facts, many of which did not contain citation to the record.  Despite Defendant's failure to follow the Local Rules, the Court nonetheless considered Defendant's facts that were supported by admissible evidence.  The Court cautions Defendant to adhere to the Local Rules in future filings.

[2] The allegations made in the State Court Case are not properly supported in this record; rather, they are arguments of counsel.  The Court has included them here only for context and because the fact that the allegations were made appears undisputed, although the Court recognizes the parties dispute the merits of the allegations themselves.

(Doc. 14-3) at 1.

During the course of the State Court Case, Grace, through legal counsel, alluded to claims against Kinesio USA and KHC for breach of contract, unjust enrichment, misappropriation of trade secrets, and tortious interference (the "Arbitration Demand"). Settlement Agreement (Doc. 14-3) at 1.  On August 19, 2011, PerformTex filed an action against KHC and K-IP in the United States District Court for the Eastern District of Pennsylvania, No. 11-05281-EL (the "Declaratory Judgment Action"), seeking a declaratory judgment regarding a patent and trade secrets.  *See id.*

On August 29, 2011, on the eve of a hearing on motions for summary judgment filed in the State Court Case and through numerous conversations and e-mails between counsel, Mr. Hope agreed to a global settlement to resolve the claims of Kinesio USA and KHC against Mr. Hope in the State Court Case and that would resolve the claims made in the Arbitration Demand and Declaratory Judgment Action.  *See* Pls.' Mem. (Doc. 14), Undisputed Fact ("UF") ¶ 1, Ex. 1 ("Aff. of Robert J. Muehlenweg") (Doc. 14-1) ¶ 2, & Settlement Agreement (Doc. 14-3).  The terms of the settlement required that Mr. Hope pay a total of $600,000.00 to Kinesio USA, KHC, and K-IP on the following terms:  an initial payment of $50,000.00 by December 1, 2011; $20,552.48 by January 1, 2012; and $16,483.99 monthly thereafter until paid.  *See* Pls.' Mem. (Doc. 14), UF ¶ 2, Ex. 1-C ("Promissory Note") (Doc. 14-4) ¶ 2 & Settlement Agreement (Doc. 14-3) ¶ 1.  Upon receipt of the initial payment, the respective parties were to dismiss the State Court Case and the Declaratory Judgment Action.  *See* Settlement Agreement (Doc. 14-3) ¶ 2.[3] The settlement also contained a clause in which the parties agreed to refrain from making any disparaging and/or derogatory remarks about each other.  *See id.* ¶ 7.

---

[3] The Settlement Agreement did not resolve the litigation between Plaintiffs and Mr. Jarvis in the State Court Action.  *See* Def.'s Resp. (Doc. 15), UF ¶ 6.  Ultimately, the state court entered summary judgment against Mr. Jarvis in excess of one million dollars.  *See id.*, UF ¶ 7; Aff. of Robert J. Muehlenweg (Doc. 14-1) ¶ 4.

On October 6, 2011, counsel for Plaintiffs, Robert J. Muehlenweg, sent an email to one of Mr. Hope's attorneys, Michael Barrie, asking about the status of the written settlement agreement and attaching a draft promissory note for his review.  Aff. of Robert J. Muehlenweg (Doc. 14-1) ¶ 5.  On October 10, 2011, Tomoko Kase, an employee of Plaintiffs sent an email to Kinesio Partners, Distributors and Instructors informing them that Kinesio terminated Mr. Jarvis on February 2010; that Kinesio filed a lawsuit against Mr. Jarvis for fraud, negligent misrepresentation, breach of fiduciary duty, civil conspiracy, and unfair trade practices; and that Kinesio received a favorable grant of summary judgment on their claims.  *See* Def.'s Resp., Ex. A (Doc. 15-1).  In an email sent on or around October 26, 2011, Mr. Barrie advised that the delay in finalizing the settlement agreement was the result of Plaintiffs making statements that he thought might violate the non-disparagement clause contained in the settlement.  *See* Aff. of Robert J. Muehlenweg (Doc. 14-1) ¶ 6.

On November 1, 2011, Mr. Hope's counsel, Sarah Stafford, sent Mr. Muehlenweg a draft of the Settlement Agreement.  Pls.' Mem. (Doc. 14), UF ¶ 3.  Mr. Muehlenweg sent Mr. Barrie a red-line of the settlement agreement reflecting minor changes on November 7, 2011.  Aff. of Robert J. Muehlenweg (Doc. 14-1) ¶ 7.

On November 28, 2011, Mr. Barrie informed Mr. Muehlenweg that Mr. Hope would not pay the initial $50,000 payment due on December 1, 2011, under the settlement and requested a four-month extension for the commencement of payments.  *Id.* ¶ 9.  Mr. Barrie also said that Mr. Hope was not willing to sign the settlement agreement due to alleged violations of the non-disparagement provisions of the settlement.  *Id.*  Mr. Muehlenweg responded that Plaintiffs were not willing to consider any proposed payment deferral without current detailed financial information from Mr. Hope confirming his inability to pay.  *Id.*

On December 7, 2011, after failing to receive from Mr. Hope financial information or payment, Kinesio USA and KHC filed in the State Court Case a motion to enforce the settlement agreement.  *Id.* ¶ 10.  On or around that same date, Mr. Hope filed a Complaint for Declaratory and Other Relief against Plaintiffs in the Court of Common Pleas in Montgomery County, Pennsylvania ("Pennsylvania Action"), seeking a declaration that actions of Plaintiffs were disparaging and tortious against Mr. Hope and his company, Performtex.  *See id.*

On January 31, 2012, Ms. Stafford sent to Mr. Muehlenweg an email proposing deferred payment terms and promising to provide Mr. Hope's personal financial statement.  *Id.* ¶ 11.  On February 13, 2012, Mr. Muehlenweg told Mr. Barrie by telephone that the revised payment terms proposed in Ms. Stafford's email were not acceptable.  *Id.* ¶ 12.  On February 15, 2012, Mr. Barrie and Mr. Muehlenweg exchanged emails regarding Mr. Hope's counterproposal to defer payments, and Mr. Barrie requested to vacate the hearing scheduled on the motion to enforce the settlement agreement.  *See id.* ¶ 13.  Mr. Muehlenweg responded that, in order to vacate the hearing, Plaintiffs required that Mr. Hope sign the settlement agreement and promissory note, provide current financial information, and make an initial payment.  *Id.*  Mr. Barrie replied that there was no way Plaintiffs would receive the money before the hearing, that he would get the documents tonight, but that he would see Plaintiffs in court.  *Id.*

On February 21, 2012, the Honorable Judge Valerie Huling in the State Court Case held a hearing on the motion to enforce the settlement agreement.  *See* Pls.' Mem., Ex. 4 (Doc. 14-9) at 1.  Judge Huling stated on the record that she "was appalled at a certain action that was basically taken by Mr. Jarvis and Mr. Hope with regard to this case," and that Mr. Hope received a benefit and advantage by settling the case before the summary judgment hearing.  Pls.' Mem., Ex. 3 ("Partial Transcript of Proceedings") (Doc. 14-8).  Judge Huling orally ruled that Kinesio USA,

5

KHC, K-IP and Mr. Hope, PerformTex, and Grace entered into an enforceable settlement agreement, the terms of which are embodied in the written Settlement Agreement.  Aff. of Robert J. Muehlenweg (Doc. 14-1) ¶ 14; Pls.' Mem., Ex. 4 (Doc. 14-9) at 2.  She also concluded that the October 10, 2011 letter distributed by Kinesio regarding Mr. Jarvis did not constitute disparagement.  Pls.' Mem., Ex. 4 (Doc. 14-9) at 2.  She therefore ordered the parties to execute the Settlement Agreement by March 14, 2012.  *Id.*  She also ordered the parties to file the appropriate documents to dismiss the State Court Action and Mr. Hope to pay Plaintiffs in accordance with the terms of the Settlement Agreement.  *Id.*

On February 29, 2012, Ms. Stafford sent Mr. Muehlenweg an email noting that Mr. Hope would be unable to make Plaintiffs' desired payment by March 13 and asking if Plaintiffs were willing to consider continuing discussions regarding Mr. Hope's request for deferred payment terms.  *See* Aff. of Robert J. Muehlenweg (Doc. 14-1) ¶ 15; Pls.' Mem., Ex. 1-D (Doc. 14-5) at 4.  Mr. Muehlenweg responded that all Kinesio was willing to consider was to forego late fees, acceleration, and enforcement costs, so long as Mr. Hope made his payments current by March 15.  Aff. of Robert J. Muehlenweg (Doc. 14-1) ¶ 15; Pls.' Mem., Ex. 1-D (Doc. 14-5) at 3.  On March 2, 2012, Mr. Barrie replied that Mr. Hope did not have the financial ability to pay, and stated:  "If you want to spend the money to chase the settlement amount and unsuccessfully attempt to find a means to pay the settlement amount, which you will need to reduce to judgment, that seems to be a waste of your client's money, but, nevertheless your choice."  Pls.' Mem., Ex. 1-D (Doc. 14-5) at 2-3.  Mr. Muehlenweg responded on March 4, 2012: "I am certainly interested in discussing ways for Mr. Hope to do what he agreed to do, but from my perspective there has been no showing of good faith[,] only delay . . . .  If we have to spend money and chase Mr. Hope we will."  Pls.' Mem., Ex. 1-D (Doc. 14-5) at 2.

On March 2, 2012, Mr. Hope dismissed the Pennsylvania Action.  Aff. of Robert J. Muehlenweg (Doc. 14-1) ¶ 22.  On March 7, 2012, Ms. Stafford sent an email to Mr. Muehlenweg informing him that Mr. Hope had dismissed the Pennsylvania Action and attaching a two-page financial statement of Mr. Hope "for purposes of these modification discussions." Pls.' Mem., Ex. 1-D (Doc. 14-5) at 1; Aff. of Robert J. Muehlenweg (Doc. 14-1) ¶ 18.  On March 14, 2012, counsel for Mr. Hope sent to Mr. Muehlenweg copies of Mr. Hope's 2009 and 2010 income tax returns.  Aff. of Robert J. Muehlenweg (Doc. 14-1) ¶ 18.

On March 14, 2012, Mr. Hope signed the Settlement Agreement and Promissory Note. *See* Settlement Agreement (Doc. 14-3) at 6; Promissory Note (Doc. 14-4) at 2.  Mr. Hope added to the Promissory Note the caveat that he signed the Note under compulsion of Court Order and that "Borrower Mr. Hope has disclosed to the Holder, Kinesio Holding Corporation, that, due to an adverse change in business conditions, he is unable to perform the obligations in accordance with the Note."  Promissory Note (Doc. 14-4) at 2.

The Settlement Agreement states in two separate paragraphs that the agreement may not be modified except in writing signed by all of the Parties.  *See* Settlement Agreement (Doc. 14-3) ¶¶ 13, 14.  The Settlement Agreement also incorporated by reference the terms of the Promissory Note.  *Id.* ¶ 1(b).  As to default, the terms of the Promissory Note provided:  "In the event Borrower fails to pay any installment within twenty (20) days of its due date, Holder may at its option, among any other remedies available to Holder under this Note, declare immediately due and payable the entire unpaid principal balance hereof, together with all interest thereon, and exercise all of its legal remedies."  Promissory Note (Doc. 14-4) ¶ 6.

On March 20, 2012, Judge Huling filed her formal written Order Granting Motion to Enforce Settlement Agreement.  Pls.' Mem., Ex. 4 (Doc. 14-9-) at 1.  At no time during the 30-

day period after entry of the Order in the State Court Action did Mr. Hope's attorneys inform Mr. Muehlenweg that they were considering an appeal of Judge Huling's Order. Aff. of Robert J. Muehlenweg (Doc. 14-1) ¶ 22. Nor did Mr. Hope's counsel inform Mr. Muehlenweg that Mr. Hope would dismiss the Pennsylvania Action. *Id.*

On many occasions from March 2012 through July 2012, Mr. Muehlenweg informed Mr. Hope's counsel that in order to consider any modification to the payment terms in the settlement agreement, Plaintiffs needed a current detailed and verified financial statement for Mr. Hope. Aff. of Robert J. Muehlenweg (Doc. 14-1) ¶ 20. Plaintiffs were willing to consider proposals for modified payment terms in an effort to mitigate their damages. *Id.* On May 8, 2012, Mr. Muehlenweg sent Mr. Barrie an email stating,

> If Mr. Hope is really interested in trying to reach an acceptable modification of the settlement terms we need to have this week updated complete financial information, a response to our Italy proposal and a new payment proposal. If not, although it is not my preferred route, we will proceed with a new action to enforce the settlement.

Pls.' Mem., Ex. 1-E (Doc. 14-6) at 1.

According to Mr. Barrie, during one of his post-March 14, 2012 conversations with Mr. Muehlenweg, "Mr. Muehlenweg stated that Plaintiffs would discuss proposals to restructure the payments due under the Settlement Agreement and the Promissory Note, provided that Mr. Hope provided Plaintiffs with certain financial information." Def.'s Resp., Aff. of Michael J. Barrie, Esq. (Doc. 15-4) ¶ 5. "Mr. Muehlenweg also had noted, either in the same or a substantially contemporaneous telephone call, that it was not Plaintiffs' intention to require Mr. Hope to perform under the terms of an agreement if he was financially incapable of doing so." *Id.* Mr. Hope has extended at least three proposals through counsel to Plaintiffs, the most recent of which was extended on October 18, 2012, all of which would have resulted in a total higher payment of

interest to Plaintiffs, and full payment of the settlement amount to Plaintiffs within the time period set forth in the original term of the Note. Aff. of John A Hope (Doc. 15-5) ¶ 11.

To date, Mr. Hope has not tendered any amounts for payment under the Settlement Agreement or Promissory Note. Aff. of Robert J. Muehlenweg (Doc. 14-1) ¶ 23.

On June 18, 2012, Plaintiffs filed a Complaint for Breach of Settlement Agreement and Collection under Promissory Note in state court. In Count I, Plaintiffs seek judgment in the amount of $50,000.00, pre-judgment interest of 10% per annum on the unpaid principal from December 1, 2011, to date of judgment, interest on the principal amount from date of judgment until paid at the rate of 15% per annum, and attorney's fees and costs. Compl. (Doc. 1-2) at 8. Under Count II for Collection under Promissory Note, Plaintiffs seek the principal sum of $550,000.00, late fees in the amount of $5,148.62 as provided under the Note, accrued interest through June 13, 2012, on the principal balance in the amount of $18,835.62, continuing interest on the unpaid principal balance at the rate of 5% per annum from June 14, 2012, until paid, and the costs of collection, including attorney's fees. *Id.* at 9.

Mr. Hope removed the case on July 30, 2012. Notice of Removal (Doc. 1). He subsequently filed an answer and counterclaims against KHC for breach of contract and promissory estoppel. *See* Def.'s Answer to Compl. and Counterclaim (Doc. 3). Mr. Hope asserts that he and KHC orally modified the terms of the Settlement Agreement and Note by agreeing to enter good faith discussions to restructure the payments due under the Note; KHC refused to discuss in good faith proposed modifications by Mr. Hope; and thus KHC breached the agreement to discuss in good faith a modification of the Settlement Agreement and Note. *See id.* at 9.

Plaintiffs filed a motion for summary judgment seeking entry of judgment in their favor

on their claims and dismissal of Mr. Hope's counterclaims. Plaintiffs also seek an award "of principal amounts due under both the Settlement Agreement and Note, attorneys' fees, late fees, pre-judgment and post-judgment interest, other accrued and continuing interest, and costs including without limitation costs of collection." Pls.' Mem. (Doc. 14) at 19.

## II. STANDARD

An important function of summary judgment is to eliminate factually-unsupported claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted).

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. ANALYSIS

### A. Mr. Hope breached the terms of the Settlement Agreement and Promissory Note

A defendant breaches a contract by failing to perform a contractual obligation when that performance is called for or announcing in advance that he will not perform a contractual obligation when the time for that performance comes due. N.M. U.J.I. 13-822. Repudiation of a contract is a distinct, unequivocal, and absolute refusal or inability to perform according to the terms of an agreement. *See Hoggard v. City of Carlsbad Through Forrest*, 909 P.2d 726, 728-29 (N.M. Ct. App. 1995). "A party's refusal to perform its obligations except upon terms that go beyond the original contract may, under certain circumstances, amount to a repudiation of the contract." *Gilmore v. Duderstadt*, 961 P.2d 175, 180 (N.M. Ct. App. 1998). Repudiation of a contract gives rise to a claim for damages for total breach. *Id.* at 181 (quoting Restatement (Second) of Contracts § 253(1) (1981)).

The undisputed facts establish that Mr. Hope breached the terms of the Settlement Agreement and Promissory Note by failing to make the initial $50,000 payment by the time set forth in the agreement and by failing to pay any amount under the agreement. Mr. Hope also unequivocally announced his inability, and thus refusal, to pay in accordance with the terms of the Settlement Agreement and Promissory Note. He expressed his inability to pay in writing when executing the Promissory Note itself, and repeatedly through counsel stated his inability to pay. Mr. Hope thus breached the Settlement Agreement.

The Court rejects Mr. Hope's argument that Plaintiffs agreed to modify the Settlement Agreement and Promissory Note by holding good faith discussions to restructure the terms of the Note. "For a contract to be legally valid and enforceable, it must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Heye v. American Golf Corp., Inc.*, 2003-NMCA-138, ¶ 9, 80 P.3d 495. "It is by now hornbook law that the test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms

and whether the terms are sufficiently definite to be specifically enforced." *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 665 (3d Cir. 1998) (internal quotations omitted).

The undisputed facts show that no contract existed to restructure the terms of the Promissory Note. The most Mr. Barrie said in support of this argument is that in one unspecified conversation with Mr. Muehlenweg, "Mr. Muehlenweg stated that Plaintiffs would discuss proposals to restructure the payments due under the Settlement Agreement and the Promissory Note, provided that Mr. Hope provided Plaintiffs with certain financial information," and that "Mr. Muehlenweg also had noted, either in the same or a substantially contemporaneous telephone call, that it was not Plaintiffs' intention to require Mr. Hope to perform under the terms of an agreement if he was financially incapable of doing so." Def.'s Resp., Aff. of Michael J. Barrie, Esquire (Doc. 15-4) ¶ 5. Such a statement is too amorphous and indefinite to indicate that Plaintiffs offered to restructure the terms of the Note and forego their legal remedies under the Settlement Agreement and Note. The general statement to discuss proposals does not demonstrate a meeting of the minds to forego remedies under the Settlement Agreement.

Even if Plaintiffs did attempt such an offer, the agreement is too indefinite to enable a court to enforce it. *Cf. Richter, S.A. v. Bank of America Nat. Trust and Sav. Ass'n*, 939 F.2d 1176, 1196 (5th Cir. 1991) ("As noted, the jury found that the Bank 'breached an oral contract ... to negotiate in good faith toward a reasonable restructure of the ... [w]inery debt' with the plaintiffs. However, we hold that even if such an agreement existed, Texas law would not enforce it, because it is too indefinite. And, whether a contract fails on this basis is a question of law."). There are no set terms to the alleged modified agreement. Instead, Plaintiffs merely stated that they would discuss proposals. In addition, the fact that the Settlement Agreement required modifications to the agreement to be made in writing further undermines Mr. Hope's

argument that these amorphous conversations to discuss payment restructuring proposals constituted a valid, unambiguous modification of the Settlement Agreement.

Moreover, the record shows no evidence of consideration for such an offer. A valid contract requires that both sides provide consideration. *Heye*, 2003-NMCA-138, ¶ 12. *See also Robinson v. Ada S. McKinley Community Servs., Inc.*, 19 F.3d 359, 364 (7th Cir. 1994) (noting that a valid modification of a contract requires an offer, acceptance, and consideration). Mr. Hope argues that in exchange for restructuring the terms of the Promissory Note, he dismissed the Pennsylvania Action and declined to appeal Judge Huling's Order. There is, however, no evidence in the record that Plaintiffs promised to engage in good faith negotiations in exchange for Mr. Hope dismissing the Pennsylvania Action and foregoing an appeal of Judge Huling's Order. Mr. Barrie makes no mention of such an exchange. Notably, Mr. Hope dismissed the Pennsylvania Action before he even executed the Settlement Agreement on March 14, 2012. Mr. Barrie's statement concerning conversations to discuss restructuring proposals took place sometime after March 14, 2012. Nor did Mr. Hope inform Plaintiffs that he planned to appeal Judge Huling's Order.

Rather, all the evidence shows that, while Plaintiffs were willing to listen to proposals to restructure payments in an effort to mitigate their losses, Plaintiffs made clear that they were not giving up their right to pursue their legal remedies under the Settlement Agreement. To find for Mr. Hope in these circumstances would have the negative policy consequences against which the New Mexico Court of Appeals cautioned in *Magnolia Mount Ltd., Partnership v. Ski Rio Partners, Ltd.*, 2006-NMCA-027, 131 P.3d 675 (2005):

> if a lender's willingness to negotiate with a debtor regarding a default resulted in ... waiver of its right to pursue its contractual remedies, lenders would refuse to communicate with defaulting borrowers, would refuse to negotiate terms of payment, and would refuse to cooperate with reasonable attempts to sell property

securing debts.

*Id.* ¶ 31. Although Plaintiffs were willing to discuss proposal to change the terms of payment, such willingness did not amount to a modification of the contract and waiver of their right to pursue remedies under the Settlement Agreement and Promissory Note. Mr. Hope therefore breached the Settlement Agreement by failing to make any payments to Plaintiffs in accordance therewith.

For the same and similar reasons, Plaintiffs are entitled to summary judgment on Mr. Hope's counterclaim for promissory estoppel. The New Mexico Supreme Court has set out the following elements for promissory estoppel:

> (1) An actual promise must have been made which in fact induced the promisee's action or forbearance; (2) The promisee's reliance on the promise must have been reasonable; (3) The promisee's action or forbearance must have amounted to a substantial change in position; (4) The promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise; and (5) enforcement of the promise is required to prevent injustice.

*Strata Production Co. v. Mercury Exploration Co.*, 916 P.2d 822, 828 (N.M. 1996). The undisputed facts show that Plaintiffs never made an actual promise to negotiate to restructure the terms of the Note and forego remedies available thereunder. Nor does the record show that Mr. Muehlenweg could have foreseen that his statements would reasonably have induced Mr. Hope to forego an appeal of Judge Huling's Order or to dismiss the Pennsylvania Action. Finally, enforcement of Mr. Muehlenweg's ambiguous statements would not prevent injustice. The elements of promissory estoppel are not present here.

In sum, the undisputed evidence establishes as a matter of law that Mr. Hope breached the terms of the Settlement Agreement and the Promissory Note and Plaintiffs are entitled to summary judgment on Count I. As Mr. Hope has made no payments to Plaintiffs, Plaintiffs are entitled to the principal amount of $50,000.00. Additionally, Plaintiff KHC is entitled to

summary judgment on Mr. Hope's counterclaims for breach of contract and promissory estoppel. The Court will therefore dismiss Mr. Hope's counterclaims.[4]

### B. Plaintiffs are entitled to collect under the Promissory Note

Mr. Hope next argues that Plaintiffs are not entitled to summary judgment on their claims because they failed to take any action before filing suit to declare the entire unpaid balance immediately due to accelerate all unpaid principal and interest on the Note. The Note provides that, in the event Mr. Hope fails timely to pay any installment, Plaintiffs may "declare immediately due and payable the entire unpaid principal balance hereof, together with all interest thereon, and exercise all of its legal remedies." Promissory Note (Doc. 14-4) ¶ 6. Plaintiffs argue that they accelerated the Note by bringing suit.

To exercise an optional acceleration clause in a promissory note, the holder must perform some act signifying an intention to accelerate. *Comer v. Hargrave*, 598 P.2d 213, 214 (N.M. 1979). In so holding, the New Mexico Supreme Court in *Comer* relied on the case of *Carmichael v. Rice*, 158 P.2d 290 (N.M. 1945), wherein the New Mexico Supreme Court stated:

> [T]his of course does not mean that the holder can exercise the option by some secret mental process on her part not evidenced by some form of affirmative action, *such as by bringing suit thereon*, or say, by entering the entire unpaid balance as immediately due and payable upon her books of account. It is imperative that some act, signifying an intention to accelerate must appear; and here, none does. *There may be other possible affirmative acts other than demand or notice by which an option could be exercised under the language of this note; without doubt it could be exercised simply by bringing suit*.

*Id.* at 292 (emphasis added).

*Carmichael* makes clear that filing suit constitutes an affirmative act signifying an intention to accelerate. Mr. Hope relies instead on *Comer*, in which the New Mexico Supreme

---

[4] Mr. Hope additionally argues that Plaintiffs are not entitled to summary judgment because they seek a post-judgment interest rate of 15% per annum under N.M. Stat. Ann. § 56-8-4, to which they are not entitled, and thus a factual issue remains. Plaintiffs correctly assert that the Court can enter summary judgment on liability, and that the application of interest is a decision to make upon issuance of the judgment.

Court held that the holder of the note waived his right to accelerate the note payments by refusing the overdue payments made by the borrower prior to the holder giving notice of intent to accelerate. *See id.* Unlike in *Comer*, Mr. Hope has never tendered any payment to Plaintiffs, and thus, filing suit can constitute the affirmative act to accelerate. *See Foreman v. Myers*, 444 P.2d 589, 592 (N.M. 1968) ("On the question of acceleration, we would but note our holding in *Carmichael v. Rice*, . . . , wherein we indicated that the bringing of suit is sufficient notice that an option to accelerate is being exercised.").

Because Mr. Hope has not tendered any payments to Plaintiffs, Plaintiffs properly accelerated all amounts due under the Promissory Note by filing suit. Accordingly, Plaintiffs are entitled to summary judgment on Count II for Collection under Promissory Note in the principal sum of $550,000.00.

### C.     Interest, late fees, attorney's fees and costs

Plaintiffs seek an award that includes "principal amounts due under both the Settlement Agreement and Note, attorneys' fees, late fees, pre-judgment and post-judgment interest, other accrued and continuing interest, and costs including without limitation costs of collection." Pls.' Mem. (Doc. 14) at 19. The Court has already determined as a matter of law that Plaintiffs are entitled to principal amounts under the Settlement Agreement and Promissory Note of $50,000.00 and $550,000.00, respectively. The Court further concludes as a matter of law that, under the terms of the Settlement Agreement and Promissory Note, Mr. Hope additionally owes Plaintiffs the following categories of damages: interest, late fees, and "all reasonable attorneys' fees, costs and expenses paid or incurred" by Plaintiffs in connection with enforcing their rights under the Note. *See* Promissory Note (Doc. 14-4) ¶¶ 1, 3, 4, 7.

Plaintiffs also seek pre-judgment and post-judgment interest based on Count I. The

parties dispute which post-judgment interest rate applies. The Court will reserve ruling on the total amount to award Plaintiffs until Plaintiffs provide evidentiary support for each amount they believe they are owed, as well as legal support regarding their request for pre-judgment and post-judgment interest. Plaintiffs should provide a detailed accounting for the total amount of damages requested. Plaintiffs must file a motion in accordance with these instructions within 30 days from the entry of this Memorandum Opinion and Order. The Court will consider the amount of the judgment upon completion of briefing on the matter.

**IT IS THEREFORE ORDERED** that Plaintiff Kinesio USA, LLC, Plaintiff Kinesio IP, LLC, and Plaintiff/Counterdefendant Kinesio Holding Corporation's Motion for Summary Judgment (**Doc. 13**) is **GRANTED** as follows:

1. Plaintiffs are **GRANTED** summary judgment on Counts I and II of their complaint.

2. Plaintiffs are **GRANTED** summary judgment on Counts I and II of Mr. Hope's counterclaim.

3. Mr. Hope's counterclaims are **DISMISSED WITH PREJUDICE**.

4. Plaintiffs must file **WITHIN 30 DAYS** of the entry of this Memorandum Opinion and Order a motion providing evidentiary support for each amount they believe they are owed, as well as legal support regarding their request for pre-judgment and post-judgment interest, with a detailed accounting for the total amount they request, in accordance with this Memorandum Opinion and Order.

_____
SENIOR UNITED STATES DISTRICT JUDGE