**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO**

KINESIO USA, LLC, a New Mexico limited
liability company, and
KINESIO HOLDING CORPORATION, a New
Mexico corporation,
KINESIO IP, LLC, a New Mexico limited liability
company,

        Plaintiffs,

v.                                                                  No. Civ. 12-00831 LH/KBM

JOHN A. "JACK" HOPE, an individual,

        Defendant,

and

JOHN A. "JACK" HOPE, an individual,

        Counterclaimant,

v.

KINESIO HOLDING CORPORATION, a New
Mexico corporation,

        Counterdefendant.

**MEMORANDUM OPINION AND ORDER**

On May 24, 2013, pursuant to this Court's Memorandum Opinion and Order (ECF No. 25) granting summary judgment to Plaintiffs Kinesio USA, LLC ("Kinesio USA") and Kinesio IP, LLC ("K-IP") and to Plaintiff/Counterdefendant Kinesio Holding Corporation ("KHC") (collectively "Plaintiffs"), Plaintiffs filed a Motion for Entry of Judgment for Principal Amounts Owed, Interest, Late Fees, Attorneys' Fees, and Costs (ECF No. 26). Defendant/Counterclaimant John A. Hope ("Mr. Hope" or "Defendant") filed a response

opposing some of the requests in Plaintiffs' motion and not others. The Court, having considered the motion, briefs, evidence, applicable law, and otherwise being fully advised, concludes that Plaintiffs' motion will be granted in part and denied in part as fully described herein.

I.     **FACTUAL BACKGROUND**

The facts of this case are more fully set forth in this Court's Memorandum Opinion and Order (ECF No. 25) filed on May 7, 2013. The following are the facts relevant to resolving the motion for entry of judgment.

On February 25, 2010, Kinesio USA and KHC filed a lawsuit against Mr. Hope and John J. Jarvis, a former employee of Plaintiffs, in the Second Judicial District Court for the State of New Mexico, No. D-202-CV-2010-02583 (the "State Court Case"). *See* Mem. Op. and Order (ECF No. 25) at 2. Kinesio USA and KHC alleged claims against Mr. Jarvis for breach of fiduciary duty, breach of a covenant not to compete, and embezzlement, and against Mr. Jarvis and Mr. Hope for fraud, negligent misrepresentation, prima facie tort, civil conspiracy, and violation of the New Mexico Unfair Practices Act. *Id.* The State Court Case involved allegations of unfair dealings by Mr. Hope and Mr. Jarvis, who purportedly entered into a business venture together and formed a company to supply athletic tape to Plaintiffs. *Id.* Kinesio USA and KHC sought money damages and an order requiring Mr. Jarvis and Mr. Hope to disgorge the amounts paid to Grace International Limited ("Grace"), a company with which Mr. Hope and Mr. Jarvis were affiliated. *Id.* Mr. Jarvis also served as the national Marketing Director for PerformTex Products, LLC ("PerformTex"), a limited liability company owned by Mr. Hope, and in his position he promoted PerformTex products, including its therapeutic elastic tape, and procured contracts with customers for the purchase of PerformTex tape products. *Id.*

During the course of the State Court Case, Grace, through legal counsel, alluded to claims against Kinesio USA and KHC for breach of contract, unjust enrichment, misappropriation of trade secrets, and tortious interference (the "Arbitration Demand"). *Id.* at 3. On August 19, 2011, PerformTex filed an action against KHC and K-IP in the United States District Court for the Eastern District of Pennsylvania, No. 11-05281-EL (the "Declaratory Judgment Action"), seeking a declaratory judgment regarding a patent and trade secrets. *Id.*

On August 29, 2011, Mr. Hope agreed to a global settlement to resolve the claims of Kinesio USA and KHC against Mr. Hope in the State Court Case and that would resolve the claims made in the Arbitration Demand and Declaratory Judgment Action. *Id.* The terms of the settlement required that Mr. Hope pay a total of $600,000.00 to Kinesio USA, KHC, and K-IP, with the initial payment of $50,000.00 due by December 1, 2011. *Id.*

On November 28, 2011, counsel for Mr. Hope informed Plaintiffs' counsel that Mr. Hope would not pay the initial $50,000 payment due on December 1, 2011; he requested a four-month extension for the commencement of payments; and he said that Mr. Hope was not willing to sign the settlement agreement due to alleged violations of the non-disparagement provisions of the settlement. *Id.* at 4. On or around December 7, 2011, Mr. Hope filed a Complaint for Declaratory and Other Relief against Plaintiffs in the Court of Common Pleas in Montgomery County, Pennsylvania ("Pennsylvania Action"), seeking a declaration that actions of Plaintiffs were disparaging and tortious against Mr. Hope and his company, PerformTex. *Id.* at 5.

After failing to receive payment from Mr. Hope, Kinesio USA and KHC filed a motion to enforce the settlement agreement in the State Court Case on December 7, 2011. *Id.* The Honorable Judge Valerie Huling in the State Court Case subsequently ruled that Kinesio USA, KHC, K-IP and Mr. Hope, PerformTex, and Grace entered into an enforceable settlement

agreement, the terms of which are embodied in the written Settlement Agreement, and she ordered the parties to execute the Settlement Agreement by March 14, 2012. *Id.* at 5-6. She also concluded that, contrary to Mr. Hope's arguments, Plaintiffs' actions did not constitute disparagement. *See id.* at 6.

On February 29, 2012, counsel for Mr. Hope notified Plaintiffs' counsel that Mr. Hope would be unable to make Plaintiffs' desired payment by March 13 and asked if Plaintiffs were willing to consider continuing discussions regarding Mr. Hope's request for deferred payment terms. *Id.* Although defense counsel attempted to negotiate modification of the payment terms in the settlement agreement, those conversations proved fruitless. *See id.* at 6-8. On March 2, 2012, Mr. Hope dismissed the Pennsylvania Action. *Id.* at 7. Mr. Hope signed the Settlement Agreement and Promissory Note on March 14, 2012, but he added to the Promissory Note the caveat that he signed the Note under compulsion of Court Order and that "Borrower Mr. Hope has disclosed to the Holder, Kinesio Holding Corporation, that, due to an adverse change in business conditions, he is unable to perform the obligations in accordance with the Note." *Id.*

On June 18, 2012, Plaintiffs filed a Complaint for Breach of Settlement Agreement and Collection under Promissory Note. *Id.* at 9. In Count I, Plaintiffs seek judgment in the amount of $50,000.00; pre-judgment interest of 10% per annum on the unpaid principal from December 1, 2011, to date of judgment; interest on the principal amount from date of judgment until paid at the rate of 15% per annum; and attorney's fees and costs. Compl. (Doc. 1-2) at 8. Under Count II for Collection under Promissory Note, Plaintiffs seek the principal sum of $550,000.00; late fees in the amount of $5,148.62 as provided under the Note; accrued interest through June 13, 2012, on the principal balance in the amount of $18,835.62; continuing interest on the unpaid principal balance at the rate of 5% per annum from June 14, 2012, until paid; and the costs of

4

collection, including attorney's fees. *Id.* at 9.

On October 11, 2012, Plaintiffs filed a motion for summary judgment seeking entry of judgment in their favor on their claims and dismissal of Mr. Hope's counterclaims. Mem. Op. and Order (ECF No. 25) at 9-10. This Court granted summary judgment to Plaintiffs on Counts I and II of their complaint, and on Counts I and II of Mr. Hope's counterclaim. *Id.* at 17. The Court concluded that, because Mr. Hope had not made any payments to Plaintiffs, Plaintiffs are entitled to the principal amount of $50,000.00 under the Settlement Agreement. *Id.* at 14. The Court further found that Plaintiffs properly accelerated all amounts due under the Promissory Note by filing suit, and thus were entitled to the principal sum of $550,000.00 under the Promissory Note. *Id.* at 16. Additionally, the Court ruled as follows:

> The Court further concludes as a matter of law that, under the terms of the Settlement Agreement and Promissory Note, Mr. Hope additionally owes Plaintiffs the following categories of damages: interest, late fees, and "all reasonable attorneys' fees, costs and expenses paid or incurred" by Plaintiffs in connection with enforcing their rights under the Note.
>
> Plaintiffs also seek pre-judgment and post-judgment interest based on Count I. The parties dispute which post-judgment interest rate applies. The Court will reserve ruling on the total amount to award Plaintiffs until Plaintiffs provide evidentiary support for each amount they believe they are owed, as well as legal support regarding their request for pre-judgment and post-judgment interest. Plaintiffs should provide a detailed accounting for the total amount of damages requested.

*Id.* at 16-17 (internal citation omitted).

In accordance with this Court's Memorandum Opinion and Order, Plaintiffs filed their Motion for Entry of Judgment for Principal Amounts Owed, Interest, Late Fees, Attorneys' Fees, and Costs (ECF No. 26), seeking, in addition to the principal amounts, pre-judgment interest at the rate of 10% per annum; post-judgment interest at the highest statutory rate of 15%; accrued interest of $44,827.30 through the date of the filing of this motion, computed at the rate of 5%

per annum until fully paid; late fees of $33,609.24; and attorneys' fees of $39,021.13, and interest thereon from the date of judgment until paid. *See* Pls.' Mot. (ECF No. 26) at 7-8.

Mr. Hope responded to the motion, noting that he did not oppose the following requests in Plaintiffs' motion: (i) principal amounts of $50,000.00 under the Settlement Agreement; (ii) principal amounts of $550,000.00 under the Promissory Note; (iii) interest on the principal balance of the Promissory Note at a rate of 5% totaling $44,827.30 (and accruing); (iv) post-judgment interest at the contractual rate under the Note of 5%; (v) late fees of 5% on the missed payments under the Promissory Note totaling $5,148.62; and (vi) the majority amount of the requested attorneys' fees and expenses. Def.'s Resp. (ECF No. 27) at 1-2. Mr. Hope, however, argues that Plaintiffs' request for pre-judgment interest and for post-judgment interest at the higher rate of 15% should be denied. *Id.* at 2. Mr. Hope also asserted that the Court should deny Plaintiffs' requests for late fees on the accelerated amount under the Note and for certain attorneys' fees not related to this action. *Id.* The Court will analyze each disputed amount owed in turn.

**II.   ANALYSIS**

    **A.   Pre-Judgment Interest**

In a diversity case, a federal court applies state law regarding the issue of prejudgment interest. *Strickland Tower Maintenance, Inc. v. AT & T Commc'ns, Inc.*, 128 F.3d 1422, 1429 (10th Cir. 1997). Plaintiffs seek pre-judgment interest under N.M. Stat. Ann. § 56-8-4(B), which provides that a court in its discretion may allow pre-judgment interest of up to 10% from the date the complaint is served upon the defendant. N.M. Stat. Ann. § 56-8-4(B). The court must consider, among other things "(1) if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and (2) if the defendant had previously made a reasonable

and timely offer of settlement to the plaintiff." *Id.* Section 56-8-4(B) provides for prejudgment interest "as a management tool or penalty to foster settlement and prevent delay in all types of litigation." *Sunwest Bank of Albuquerque, N.A. v. Colucci*, 117 N.M. 373, 378, 872 P.2d 346, 351 (N.M. 1994). The purpose of the statute is to help ease the burden on the crowded court system by fostering settlement and preventing delay. *Id.*

Plaintiffs contend they are entitled to pre-judgment interest on the Settlement Agreement amount of $50,000 at the rate of 10% per annum because Defendant caused an unreasonable delay in both this case and the State Court Case. Defendant argues that he made numerous reasonable offers of settlement to Plaintiffs and that he did not cause any unreasonable delay in this litigation.

The Court declines to award Plaintiffs pre-judgment interest in this case. Although the first factor weighs in favor of Plaintiffs because they have not caused an unreasonable delay in the adjudication of their claims, with respect to the second factor, there is evidence in the record that Defendant made reasonable and timely offers of settlement to Plaintiffs. *See* Mem. Op. and Order (ECF No. 25) at 8-9 ("Mr. Hope has extended at least three proposals through counsel to Plaintiffs, the most recent of which was extended on October 18, 2012, all of which would have resulted in a total higher payment of interest to Plaintiffs, and full payment of the settlement amount to Plaintiffs within the time period set forth in the original term of the Note."); Def.'s Resp., Ex. A (ECF No. 27-1) (October 18, 2012 letter) (offering a monthly payment plan until payment of settlement amount made in full with Mr. Hope consenting to judgment being entered against him in the accelerated amount with Plaintiffs holding judgment in escrow). The Court recognizes that this federal case arose because Mr. Hope breached the Settlement Agreement reached in the State Court Case, and thus Plaintiffs have suffered delay in recovering the

amounts to which they were entitled from the underlying case. The pre-judgment interest award, however, applies to the delay and settlement offers made in this case, beginning on June 18, 2012, to present. Because the record shows Mr. Hope has not unduly delayed in the adjudication of this case and has offered reasonable settlements in this case, the Court finds that an award of pre-judgment interest is not appropriate.

### B. Post-Judgment Interest

New Mexico law provides for post-judgment interest:

> Interest shall be allowed on judgments and decrees for the payment of money from entry and shall be calculated at the rate of eight and three-fourths percent per year, unless:
> (1) the judgment is rendered on a written instrument having a different rate of interest, in which case interest shall be computed at a rate no higher than specified in the instrument; or
> (2) the judgment is based on tortious conduct, bad faith or intentional or willful acts, in which case interest shall be computed at the rate of fifteen percent.

N.M. Stat. Ann. § 56-8-4(A).

Plaintiffs assert they are entitled to post-judgment interest at the rate of 15% because Mr. Hope's breach of the Settlement Agreement was done intentionally and in bad faith. Plaintiffs point to the facts that Mr. Hope announced his inability, and thus, refusal to pay in accordance with the terms of the Settlement Agreement, but that Mr. Hope repeatedly failed to provide adequate documentation to Plaintiffs supporting his financial hardship position. Defendant contends that post-judgment interest should be applied at the contractual rate under the Note of 5%, or alternatively, at the base statutory rate of 8.75%. Defendant argues that judgment is based here on a breach of contract and there is no evidence of bad faith or intentional acts.

### 1. The 5% interest rate in the Note is not the proper post-judgment interest rate on the principal amount of $50,000 under the Settlement Agreement

The Settlement Agreement provides that Mr. Hope shall pay to Kinesio the sum of

$600,000 as follows: $50,000 on or before December 1, 2011, and the "remaining balance in equal installments of principal and interest for a term of three (3) years in accordance with the Note attached hereto the terms of which are incorporated by reference as if fully set forth herein." Settlement Agreement (ECF No. 14-3) ¶¶ 1(a)-(b). The Promissory Note provides that Mr. Hope will pay the principal sum of $550,000.00, "together with interest which shall accrue thereon." Promissory Note (ECF No. 14-4) at 1. The Promissory Note contains an "Interest Rate" provision that states: "Interest shall accrue and be earned on the principal balance of this Note at an annual rate equal to five percent (5%) from October 7, 2011 (the 'Effective Date')." *Id.* ¶ 1. According to the terms of the Settlement Agreement and Promissory Note, the 5% interest rate applies on the principal balance of the Note – the $550,000 sum – not on the initial payment of $50,000 due under ¶ 1(a) of the Settlement Agreement. Judgment for Count I is based on breach of the Settlement Agreement, which occurred when Mr. Hope failed to make the initial payment in the amount of $50,000. The Court agrees with Plaintiffs that "[t]herefore, the $50,000 due under the Settlement Agreement is not subject to the Note rate." *See* Pls.' Reply (ECF No. 28) at 6. The Court will thus apply one of the statutory post-judgment interest rates to the principal amount of $50,000 under the Settlement Agreement.

As to the principal sum of $550,000 under the Promissory Note (Count II), the parties agree that the interest rate of 5% applies, not the statutory post-judgment interest rate. *See id.* (stating only that the "$50,000 due under the Settlement Agreement is not subject to the Note rate"); Pls.' Mot. (ECF No. 26) at 7-8 (requesting post-judgment interest only on Settlement Agreement and asking for 5% interest rate for unpaid principal amount under Promissory Note until fully paid). Indeed, the Complaint requests the statutory post-judgment interest rate in Count I; but in Count II, Plaintiffs do not make a post-judgment interest request. *Compare*

9

Compl. (ECF No. 24-1) at 8 (asking in Count I for judgment including "interest on the principal amount from date of judgment until paid at the rate of fifteen (15%) per annum pursuant to NMSA § 56-8-4), *with* Compl. (ECF No. 24-1) at 9 (asking in Count II "for continuing interest on the unpaid principal balance at the rate of 5% per annum from June 14, 2012 until paid" while not requesting post-judgment interest). The Court will therefore apply the 5% rate for the unpaid principal amount of $550,000 under the Note for the unpaid principal amount until fully paid.

### 2. Post-judgment interest rate of 8.75% is appropriate on the principal amount of $50,000 under the Settlement Agreement

The purposes for awarding post-judgment interest are twofold: (1) to compensate a plaintiff for being deprived of compensation from the time of judgment until payment of the judgment debt by the defendant, and (2) to create an incentive for unsuccessful defendants to avoid frivolous appeals and to minimize the necessity for court-supervised execution upon judgments. *Public Serv. Co. of New Mexico v. Diamond D Const. Co., Inc.*, 2001-NMCA-082, ¶ 51, 33 P.3d 651. "[T]he legislature intended to leave the appropriate rate of post-judgment interest to the discretion of the trial court in cases where a judgment is not based on tortious conduct, bad faith, or a specific finding of intention or willfulness, but where the evidence shows that a defendant's liability to a plaintiff is based on intentional or willful actions." *Id.* ¶ 53. The higher rate of 15% post-judgment interest "is warranted when the facts of a particular case show that the defendant has acted culpably in the past and therefore may be in need of additional encouragement to timely pay the judgment debt owed to the plaintiff." *Id.* ¶ 55. "Willful" conduct means "the intentional doing of an act with knowledge that harm may result." *Id.* ¶ 59 (quoting N.M. U.J.I. 13-1827). Where a judgment is based on a breach of contract, a plaintiff must show evidence that the defendant intended to breach the contract and thereby harm the plaintiff. *See id.* ¶ 61.

The judgment in this case does not arise out of tortious conduct; rather, it arises from a breach of a contract, specifically the Settlement Agreement. Plaintiffs argue that Mr. Hope's refusal to pay in accordance with the Settlement Agreement and Note amounted to intentional conduct and bad faith. Plaintiffs point to the fact that Mr. Hope, when signing the Settlement Agreement, added the caveat that "due to an adverse change in business conditions, he is unable to perform the obligations in accordance with the Note." Plaintiffs also contend that his refusal to provide adequate financial information to substantiate his inability to pay also gives rise to an implication of intentional delay. Mr. Hope argues that he failed to satisfy his obligations based on financial inability and that he made repeated attempts to renegotiate the terms that would have still resulted in full payment of the settlement amount to Plaintiffs within the time period set forth in the original term of the Note.

The Court is unable to determine, based on the record before it, whether Mr. Hope has had the financial means to pay in accordance with the settlement agreement, and instead, chose not to in order to harm the Plaintiffs. While Mr. Hope certainly breached the agreement, there is no evidence to establish that he did so with the intent to harm Plaintiffs, rather than from mere inability to satisfy his contractual duties. Although Mr. Hope noted his inability to fulfill his obligations when signing the Settlement Agreement, he signed the agreement under court order, after Judge Huling determined that Mr. Hope had already entered into a valid, binding settlement agreement. The record does not reflect that, at the time those negotiations were conducted and finalized, Mr. Hope knew and intended to breach his negotiated agreement. The Court cannot find based on the evidence before it that Mr. Hope acted culpably in a manner warranting the higher post-judgment interest rate. *Cf. id.* ("Although the evidence showed that PNM acted with utter indifference to Diamond D's rights under the contract and understood that its failure to

respond to Diamond D's attempts to resolve the billing dispute could harm Diamond D, Diamond D has not directed us to evidence sufficient to support a finding that PNM intended to breach the contract and thereby harm Diamond D."). A rate of 8.75% interest offers sufficient encouragement to Mr. Hope to timely pay the judgment debt owed to Plaintiffs. Consequently, the Court will apply the statutory post-judgment interest rate of 8.75% to the principal amount of $50,000 under the Settlement Agreement.

      C.      **Late Fees**

The Promissory Note contains a "Late Fee" provision that states: "If any payment is not paid within ten (10) days of its due date, a late fee equal to five percent (5%) of the late payment shall be immediately due and payable." Promissory Note (ECF No. 14-4) ¶ 4. Mr. Hope agrees with Plaintiffs that he owes a total of $5,148.62 in late fees due to the six missed payments under the Promissory Note that he missed prior to the acceleration of the Note that occurred when Plaintiffs filed their complaint. The parties disagree, however, concerning whether Plaintiffs may collect late fees for the accelerated amount due upon filing of the Complaint.

The Promissory Note provides that, if the borrower fails to make any payment within 20 days of its due date, the holder may "declare immediately due and payable the entire unpaid principal balance hereof, together with all interest thereon, and exercise all of its legal remedies." *Id.* ¶ 6. According to Plaintiffs, including 5% interest for the 255-day period between dates of the missed payment and when they filed the Complaint, Mr. Hope owed them $569,212.33 upon acceleration ($550,000.00 due under the Note + $19,212.33 in interest). Plaintiffs argue that the Promissory Note calls for applying the 5% late fee to that total amount, resulting in an additional $28,460.62 in late fees on the accelerated amount. Plaintiffs assert that the "Late Fee" provision applies to "any payment" not paid within 10 days of its due date, which would include the

payment due upon acceleration. Mr. Hope contends that the application of late fees to the accelerated amount is a double penalty that is improper based on the plain language and structure of the Note. Mr. Hope argues that the "Late Fee" provision applies only to late monthly payments under the Note while the entirely separate provision of the Note concerning default governs upon acceleration. Mr. Hope asserts that once the borrower is in default, the remedy is acceleration, and the late fee provision no longer applies.

The Court agrees with Mr. Hope's interpretation. The "Late Fee" provision attaches a late fee for any payment not paid within 10 days of "its due date." *See id.* ¶ 4. The due date of each payment is set forth in the "Payment" provision that creates a monthly payment plan. *See id.* ¶ 2. The "Default" section creates a separate, optional remedy for any payment 20 or more days late – acceleration of the entire unpaid principal balance plus interest. *See id.* ¶ 6. The more reasonable interpretation of the Promissory Note, based on its plain language and structure, is that the late fee provision only applies to late monthly payments, and does not provide for an additional late fee upon default and acceleration. The Court will therefore only award Plaintiffs $5,148.62 in late fees.

**D.     Attorneys' Fees**

Mr. Hope does not oppose Plaintiffs' request for attorney's fees and expenses incurred in connection with this action; however, he opposes Plaintiffs' attempts to collect fees and expenses in separate actions and proceedings that they incurred prior to the execution of the Note. Specifically, Mr. Hope objects to fees and expenses incurred by Plaintiffs

> pursuing a Motion to Enforce Settlement Agreement and to Allow Limited Disclosure of Settlement Terms in the *Kinesio USA, LLC, et al v. John J. Jarvis and John A. "Jack" Hope*, Bernalillo County District Court No. D-202-CV-2010-02583 action and in defending a Complaint for Declaratory and Other Relief brought by Mr. Hope in Pennsylvania, *John A. Hope, et al. v. Kinesio USA, LLC, et al*, Court of Common Pleas of Montgomery County, Pennsylvania, No. 2011-

> 33539 ("Hope Pennsylvania Action"), which sought to excuse Mr. Hope's obligation to perform under the settlement agreement reached with Kinesio.

*See* Aff. in Supp. of Award of Attorney's Fees (ECF No. 26-2) ¶ 8. Mr. Hope argues that both those separate proceedings occurred and effectively concluded prior to Mr. Hope's signing of the Settlement Agreement and Promissory Note on March 14, 2012. At the time Plaintiffs filed the motion to enforce the Settlement Agreement, the payments on the Note were not yet due. Additionally, he contends that fees should not be awarded for the Pennsylvania Action because the Plaintiffs, as the holder of the Note, did not bring that action, and they were not the prevailing party because Mr. Hope voluntarily dismissed the action.

> The Promissory Note provides:
>
> If Holder retains an attorney to send a demand notice hereunder or to otherwise enforce Holder's rights under this Note, Borrower shall reimburse Holder for all reasonable attorneys' fees, costs and expenses paid or incurred by Holder in connection therewith and any action in bankruptcy or probate. Notwithstanding the foregoing, in the event that Borrower prevails against Holder in any suit brought by either party to interpret or enforce this Note, the prevailing party shall be entitled to recover reasonable attorneys' fees and expenses and costs of court incurred in connection therewith.

Promissory Note (ECF No. 14-4) ¶ 7.

The Court concludes that Plaintiffs are entitled to the attorneys' fees and expenses arising from Plaintiffs' filing the motion to enforce the settlement agreement. As set forth in this Court's prior Memorandum Opinion and Order, the parties entered into a global settlement agreement on August 29, 2011, on the eve of a hearing on the motions for summary judgment in the State Court Case, which resolved the State Court Case and the claims made in the Arbitration Demand and Declaratory Judgment Action. *See* Mem. Op. and Order (ECF No. 25) at 3. On October 6, 2011, Plaintiffs' counsel sent defense counsel a draft promissory note for review; on November 1, 2011, defense counsel sent Plaintiffs' counsel a draft settlement agreement; and on

November 7, 2011, Plaintiffs' counsel returned a red-line of the settlement agreement showing minor changes.  *See id.* at 4.  On November 28, 2011, defense counsel notified Plaintiffs that Mr. Hope would not pay the initial $50,000 payment due on December 1, 2011, under the settlement, and requested a four-month extension of payments.  *See id.*  Plaintiffs filed their motion to enforce the settlement agreement on December 7, 2011.  *See id.* at 5.

The Honorable Judge Valerie Huling ruled at the February 21, 2012 hearing that Plaintiffs and Mr. Hope had entered into an enforceable settlement agreement, the terms of which were embodied in the written Settlement Agreement.  Consequently, although Judge Huling ordered Mr. Hope to sign the Settlement Agreement and Promissory Note, she did so after finding that the parties had already entered into a valid, binding settlement agreement prior to Plaintiffs filing the motion to enforce the settlement agreement.  The Court recognizes that Plaintiffs filed their motion prior to the January 1, 2012 deadline for the first payment under the Note; however, Mr. Hope, by announcing his inability and/or refusal to pay the initial $50,000 payment under the Settlement Agreement and asking for a four-month extension for the commencement of all payments, repudiated both the Settlement Agreement and the Promissory Note.  *See* N.M. U.J.I. 13-822 (explaining that a defendant breaches a contract by failing to perform a contractual obligation when that performance is called for or announcing in advance that he will not perform a contractual obligation when the time for that performance comes due); *Gilmore v. Duderstadt*, 961 P.2d 175, 180 (N.M. Ct. App. 1998) ("A party's refusal to perform its obligations except upon terms that go beyond the original contract may, under certain circumstances, amount to a repudiation of the contract."); *Hoggard v. City of Carlsbad Through Forrest*, 909 P.2d 726, 728-29 (N.M. Ct. App. 1995) (noting that repudiation of a contract is a distinct, unequivocal, and absolute refusal or inability to perform according to the terms of an

agreement).  Moreover, Mr. Hope never made an initial payment under the Settlement Agreement or any payments under the Note before the January 1, 2012 deadline, confirming his oral repudiation.  Plaintiffs' motion to enforce the settlement agreement and the proceedings that followed encompassed Plaintiffs' enforcement of their rights under the Note.  Accordingly, the Court will award Plaintiffs attorneys' fees and expenses arising from the motion to enforce the settlement agreement in the State Court Case.

With respect to the Pennsylvania Action, Mr. Hope filed the complaint on or around December 7, 2011, after the parties had entered a valid and binding settlement agreement.  *See* Mem. Op. and Order (ECF No. 25) at 5.  Mr. Hope sought a declaration that actions of Plaintiffs were disparaging and tortious against Mr. Hope and his company, PerformTex.  *See id.*  This issue was essentially the same assertion Mr. Hope made in the State Court Case in order to try to show that Plaintiffs had breached the Settlement Agreement and to excuse his performance under the Settlement Agreement and Promissory Note.  Shortly after Judge Huling ruled that Plaintiffs' actions did not constitute disparagement, Mr. Hope dismissed the Pennsylvania Action, on March 2, 2012.  *See id.* at 6-7.  The Court concludes that the attorneys' fees and expenses Plaintiffs incurred in defending the Pennsylvania Action fall within the attorney's fees provision of the Note.  The issues raised in the Pennsylvania Action were relevant and intertwined with those raised in the State Court Case, and thus essential for Plaintiffs to defend in order to enforce their rights under the Note in the State Court Case.  Plaintiffs thus had to retain an attorney in the Pennsylvania Action in order to ensure their ability to enforce their rights under the Note.  The Court will therefore award Plaintiffs attorneys' fees and expenses arising from the Pennsylvania Action.

Mr. Hope offers no other objections to the attorneys' fees and expenses claimed by

Plaintiffs.  The Court will therefore award the full amount of attorneys' fees and expenses Plaintiffs request in the amount of $39,021.14.[1]

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Entry of Judgment for Principal Amounts Owed, Interest, Late Fees, Attorneys' Fees, and Costs (**ECF No. 26**) is **GRANTED in part and DENIED in part** as follows:

1. The Court **DENIES** Plaintiffs' requests for pre-judgment interest, post-judgment interest at the higher statutory rate of 15%, and late fees on the accelerated amount due upon filing of the Complaint.

2. The Court **GRANTS** Plaintiffs' requests for the following amounts:

   a. the principal amount of $50,000.00 under the Settlement Agreement;

   b. post-judgment interest at the rate of 8.75% on the principal amount of $50,000.00 under the Settlement Agreement;

   c. the principal amount of $550,000.00 under the Promissory Note;

   d. interest on the principal balance of the Promissory Note at a rate of 5% per annum, totaling $52,587.32 at the time of entry of this Memorandum Opinion and Order and the contemporaneously filed Judgment ($44,827.30 through May 24, 2013, plus $75.34 per day x 103 days), and continuing to accrue at the rate of 5% per annum for the unpaid principal until fully paid;

---

[1] This amount includes attorneys' fees for the time period after April 23, 2013, which as of the date Plaintiffs filed their motion, had not yet been billed to Kinesio but would be at the next scheduled billing date.  *See* Aff. in Supp. of Award of Attorney's Fees (ECF No. 26-2) ¶ 12.  In his Affidavit, Robert J. Muehlenweg, counsel for Plaintiffs, estimated the additional attorneys' fees amount to be approximately $1,000.  *See id.*  Although generally the Court would require more specific proof to support the amount, Mr. Hope has not objected to this amount, and thus has essentially agreed to its inclusion in the judgment.

    e. late fees under the Promissory Note, totaling $5,148.62; and

    f. attorneys' fees and expenses in the amount of $39,021.14, and interest thereon from date of judgment until paid at the rate of 5% per annum.

              _____
               **SENIOR UNITED STATES DISTRICT JUDGE**